Good morning, Your Honor. May it please the Court, my name is Palmer Huvestal. I'm an attorney from Helena, Montana. I represented Mr. Martell at trial and, of course, here on appeal. I'm going to use or reserve two minutes for rebuttal. Basically, this appeal requires the Court to determine whether there was sufficient evidence to convict Mr. Martell of the offense of assault with the intent to commit murder. Of course, the focus in this appeal is whether there was sufficient evidence available to the jury to prove that Mr. Martell had the intent to kill the victim. And, of course, we submit that there was not. To convict him, they had to prove that in Mr. Martell's subjective mind, contemporaneous with this assault, he intended to kill his wife, his girlfriend, Ayla Jones. At trial, he readily conceded that he intended to hurt her. He readily conceded that he intended to injure her. And he was convicted of the offense of assault resulting in substantially bodily — substantial bodily injury, and he is doing his sentence now. And so reviewing the case law in the Ninth Circuit, we were unable to find any specific case directly on point. We saw the Jones case that's been cited in the briefs. We saw the Cain case, an unpublished case, but — unpublished opinion, rather. But here we're looking at whether the evidence supported an intent to kill. The government points to such conduct as, you know, the brutality and the severity of the beating. Again, Mr. Martell, at trial, took the witness stand, testified that he intended to hurt her, intended to injure her, but that intent did not go so far as an intent to kill. And so it's our submission that without more evidence of intent to kill, an inference cannot be drawn from the severity of the beating in order to convict. How about the statement that he made, or at least according to what was testified to, that bitch should have come out of there in a body bag? Right. And that's, of course, the next piece of evidence that the government talks about. And we look at that in context. And so Mr. Martell is arrested. He's sitting in the back of a police car. In his subjective mind, he did this, and he was proper in doing it because she cheated on him, basically. And when he makes that statement, a critical inquiry of the meaning of it is that it is a an expression of regret. I mean, for example, I can't say why it's not a jury question. Well, it was a jury question, but they got it wrong, Your Honor, because when you look at the actual statement, it's not a contemporaneous statement of intent, that is, with the beating. Well, you're not saying he has to stand over and say, as he's got this pipe or this pole or whatever he has, bam, bam, bam, bam, bam, and I intend to kill you. I mean, you're not going to have that. But that's what you're saying. It has to be a contemporaneous statement? Well, for example, that occurs in some of the cases. For example, I think one of the cases cited in Randolph, the guy said, I'm going to blow your head off and then shot another person. That is a contemporaneous statement of intent. Here, they don't have that evidence. But that's not a requirement for a conviction to be sustained on intent. That just happened to be the facts of one case where it was a slam dunk, right? Right. I mean, here, what about you referenced the Jones case, and I think Jones looks at both duration and severity of the injury. And we had people talking here that the severity of this was not a casual few seconds, but maybe it was the worst they'd ever seen. Correct. And the doctor said this kind of blow, any of these could have actually killed you. When you add that to the other testimony, don't we get back to what Judge Ripple asked about? Isn't that for the jury, then, to make a determination based on those facts? Well, the jury, as the Court knows, can't, cannot make a decision based on speculation or conjecture. And the actual meaning of the statement, I should have, or she should have come out in a body bag, you know, when you look at it on a cold record in the cool detachment of an appellate court, is just like, well, this morning I should have taken a different route because there's a train going across this one. In other words, it's a, it's an expression of regret that it didn't happen. But it was that happened after the fact. It was not contemporaneous with the actual assault. In Jones, the Court incidentally reversed, but the incident reversed on a, an instructional error. The instruction was wanton and callous disregard for, you know, human life, which was an error. But I think that actually the Jones case assists this argument because the Court did say his five multiple stab wounds, you know, basically make his defense incredible. But because of the fact that the jury may have made a decision based upon the callous and wanton disregard, or whatever the actual language was, we're going to reverse. And so, in fact, that's what happened. And so in this case, we concede that the beating was severe. We concede that it was brutal. We concede that she received injuries. But it didn't go the evidence was not far enough to prove an actual contemporaneous subjective intent to kill. She should have come out in a body bag. This is a retrospective comment on something that occurred in the past. Similar to the future statements that he made. In other words, if she does this again, if she fools around on me again, then I'm going to kill her, or words to that effect.  Or another episode of infidelity. It's not contemporaneous with the assault. And so, as a consequence, without that kind of evidence, without a contemporaneous statement, or without additional evidence of intent to kill, like a stabbing, for example, or like a gunshot, or something else, I don't think that the government meets its burden, and I don't think on this record there is actual evidence of a contemporaneous intent to kill. Good morning, Your Honors. My name is Jessica Bettley. I'm representing the United States from Great Falls, Montana. I was also the trial attorney in this matter. May it please the Court. The government requests that this Court affirm the defendant's conviction for assault with intent to commit murder, and that the defendant's request to vacate the sentence on this specific count should be denied. Taken in the light most favorable to the government, there was sufficient evidence presented at trial to the jury to prove that the defendant intended to commit murder after he relentlessly beat Ayla Jones by multiple witness testimony throughout the evening. He caused her life-threatening injuries. And then that final statement of that bitch should have come out of the house in a body Now, this Court reviews the challenge to the sufficiency of the evidence to support a jury verdict on a two-part test, first in viewing the evidence presented in a light most favorable to the prosecution, to the government here. And the Court also considers whether the evidence is adequate to allow any rational trier fact to find the essential elements of this crime beyond a reasonable doubt. Now, in regards to this crime of assault with intent to commit murder, the jury heard an abundance of evidence through this trial about this brutal beating. And as this Court has already addressed, multiple witnesses said this was one of the most horrific things they had ever seen. Officer Ray Lamb, one of the reporting officers to the scene, a tribal officer from Fort Peck, said he had never seen a woman beaten quite this badly. And he sees a lot of violence on this reservation. The emergency room doctor, who had gotten his training in Cook County and Chicago as well, said this was absolutely one of the most horrific assaults he had ever treated on the reservation. And he as well had seen a lot in his experience. And it should be noted that the testimony presented did span the course of an evening, that it began with the defendant, Robin Martel, and the victim, Ayla Jones, getting into a fight outside of a bar, that she was choked. She fell to the ground, and the parties separated. She ended up calling the police, and Robin Martel, the defendant, was taken away by the police. He wasn't arrested, but he was taken to a town 20 miles down the road, because the officer at that point saw how volatile this situation was and knew the parties needed to be separated. And so the defendant goes 20 miles down the road to his cousin's house. His cousin testified that he left somewhere around 4 o'clock in the morning, and Robin Martel went back to the victim's home that he shared with her. He goes back, and at that point, she testified she was passed out asleep. She was not awake. There was no one home. And the defendant then began to beat her. And what's notable is that the defendant testified at trial. The jury heard from both Ayla Jones, the victim, other witnesses, as well as the defendant, and evaluated the credibility of these witnesses. And the defendant himself testified that he was blackout mad at Ayla Jones. He was so mad that when he got home, he started beating her. He stated with only his fists, but he kicked her. He threw her around by her hair, and he bounced her off walls. And his exact words were, she was falling all over, and he busted her hard. He was in a blackout stage. That's how mad he was. So the jury heard the extent of this evening, this horrific evening. They saw pictures of this assault. There was blood coating the house. And the defendant himself agreed that it would take a large amount of force to hit someone so hard for their blood splatter to end up on the ceiling. In fact, when these officers went back to the house that the defendant and the family members saw, there was so much blood, it was beginning to clot. Family members didn't recognize the victim. She had so much blood soaked through her clothes, her hair, absolutely horrific. So not only did the jury hear about this assault, and no matter how long it lasted, an assault that coated over half the house with blood. But then, as Ayla Jones was being taken out of the house, when the ambulance arrived, and she came out of her grandmother's house on a backboard, that's when these witnesses saw the defendant and testified that he was sitting in the back of the patrol car, clapping his hands and laughing and pointing at the victim. This is not a man that had regret for what he did. This is not a man that felt bad for the victim. This is someone that was upset that that woman was not dead. And then he followed that up with, that bitch should have come out of the house in a body bag, and he should have made sure of it. He expected the victim to not be alive, and he was upset that she was. Now, as was discussed, there is very little case law addressing assault with intent to commit murder, and the specific intent there. But I would like to note that there was discussion about the Jones case. And it appears that that case was reversed in the circuit solely because the lower court there, the district court, gave jury instructions for both attempted murder as well as assault with intent to commit murder. And so there was confusion as to whether the jury actually found that the defendant had this specific intent to kill or whether there was a wanton and willful disregard for human life. That was the issue there. However, this Court did point out that the number and location of wounds inflicted upon that victim in Jones made the defendant's defense that he did not intend to kill all but incredible. And that is what is here today, that based on the brutality of this assault, the injuries the victim inflicted, and coupled with the defendant's statement that she should have come out of the house in a body bag, it is all but incredible to believe that the defendant did not intend to kill the victim. And so the government is requesting that this Court affirm the defendant's conviction for assault with intent to commit murder, that viewing the evidence in a light most favorable to the prosecution, it is clear that the evidence was adequate to allow any rational trier of fact to find that Martel, the defendant, assaulted Ayla Jones by intentionally wounding her with the intent to commit murder. If the Court has no questions. Ginsburg. It appears not. Thank you. Government will see this time. Thank you. You have some rebuttal time. Your Honor, of course, looking at this standard, the Neville case, the Holloway case, or rather, the Jackson case, standard is looking at the evidence in the light most favorable to the government. So actually looking at this evidence in the light most favorable to the government, there's no factual dispute as to the severity of the beating. He – the beating was severe. It was brutal. There was blood all over the place. And he did intend to harm. And he did harm her. And he's paying the price for that. The legal question is whether that goes far enough to establish a contemporaneous intent to kill. And it's not there. The only evidence that we really do have that might come close is the statement she should have left in a body bag. Again, in context, he's sitting in the back of a car. He's been drinking all night. He's angry. And that is a retrospective comment on the outcome based upon his anger at her for her infidelity. But that was not a contemporaneous intent. And that's my argument. Thank you. We appreciate it. We appreciate both arguments. And again, also thank you for coming from Montana. United States v. Martel is submitted.
judges: Ripple, McKeown, Nguyen